ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br>APELADA(S)<br><br><br>V.<br><br><br>**ADRIÁN ROSADO ROSADO**<br>ACUSADA-APELANTE(S) | **KLAN202400026** | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **AÑASCO**<br><br>Caso Núm.<br>**I1CR202300064-65** (201)<br><br>Sobre:<br>Art. 177 y 246 CP |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 21 de abril de 2026.

Comparece ante este Tribunal de Apelaciones, el señor **ADRIÁN ROSADO ROSADO** (señor **ROSADO ROSADO**) mediante *Apelación Criminal* interpuesta el 2 de enero de 2024. En su escrito, nos solicita que revisemos las *Sentencias* emitidas el 15 de noviembre de 2023 por el Tribunal de Primera Instancia (TPI), Sala Superior de Añasco.[1] En dichos fallos, el foro *a quo* declaró culpable al señor **ROSADO ROSADO** por violación a los Artículos 177 y 246(A) del Código Penal de Puerto Rico de 2012 y le impuso como condena una pena monetaria por la cantidad de $200.00 por cada delito o su conversión a un (1) día de cárcel por cada $50.00 que deje de pagar. Así como, le impuso el pago de $100.00 de comprobante como pena especial.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

---

[1] Apéndice de la *Apelación Criminal Alegato del Apelante*, págs. 1-2.

Número Identificador: SEN2026_____

- I -

Por hechos ocurridos el día 1 de noviembre de 2022, en el municipio de Mayagüez, EL PUEBLO DE PUERTO RICO (PPR), representado por el MINISTERIO PÚBLICO, presentó dos (2) denuncias contra el señor ROSADO ROSADO. Ello por: (i) infracción al Artículo 177 del Código Penal de Puerto Rico de 2012 sobre amenazas; (ii) infracción al Artículo 246(A) del Código Penal de Puerto Rico de 2012 sobre resistencia u obstrucción a la autoridad. En lo pertinente, estas denuncias aducen:

> El referido imputado ADRIÁN ROSADO ROSADO allá en o para el día 1 de noviembre de 2022 y en Mayag[ü]ez, Puerto Rico[,] que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, ilegal, voluntaria, maliciosa y criminalmente, **amenazó al Agente Flerin Albino Acosta, Placa 22184, quien es agente del orden público con causarle daño determinado a su persona. Consistente en que le dijo: "[d]onde quiera que yo lo coja al Flerin ese, le voy a arrancar la cabeza"**, sintiendo el perjudicado temor por su vida y haciendo esta amenaza en presencia del Agente Daniel Vega Montalvo, Placa 24301.[2]

> El referido imputado ADRIÁN ROSADO ROSADO allá en o para el día 1 de noviembre de 2022 y en Mayag[ü]ez, Puerto Rico[,] que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, ilegal, voluntaria, maliciosa y criminalmente, **obstruyó el ejercicio de la autoridad pública, Agte. Flerin Albino Acosta, Placa 22184[,] y del Agente Daniel Vega Montalvo, Placa 24301[,] demorando y/o estorbando a éstos en el cumplimiento de sus obligaciones de su cargo. Consistente en que el aquí imputado, no quiso entregar los documentos requeridos por los Agentes; enti[é]ndase licencia y registración de su vehículo, para que estos pudieran expedir o emitir los boletos administrativos correspondientes por la falta a la Ley 22 de Tránsito (Tintes), ni tampoco brindar información personal para poder trabajar las infracciones a la Ley de Tránsito**.[3]

El 6 de diciembre de 2022, se celebró audiencia en la cual *no se determinó causa probable*.[4] Así las cosas, el **PPR** acudió en alzada, y el 24 de febrero de 2023, celebrada la audiencia, se *determinó causa probable* para acusar por los delitos imputados.[5]

Luego de varios trámites procesales, el 27 de septiembre de 2023 y el 15 de noviembre de 2023, se celebró el Juicio en su fondo. El **PPR** presentó como prueba de cargo los testimonios de las siguientes personas: agente Daniel Vega Montalvo;

---

[2] Apéndice de la *Apelación Criminal Alegato del Apelante*, pág. 5.
[3] *Íd*., pág. 6.
[4] *Íd*., págs. 5-6.
[5] *Íd*., págs. 7-8.

agente Flerin Albino Acosta; y el teniente Antonio Torres Rivera. La prueba de la defensa consistió en los testimonios de los señores **ROSADO ROSADO** y Marilyn Vega Jiménez. Incluimos un resumen de las atestaciones brindadas ante el Tribunal de Primera Instancia las cuales hemos examinado con sumo cuidado.

### Agente Daniel Vega Montalvo

Atestiguó que trabaja para la Policía de Puerto Rico hace veintisiete (27) años, y hace un (1) año y dos (2) meses está en la División de Tránsito de Mayagüez.[6] Narró, que el día de los hechos, el 1 de noviembre de 2022, como a eso de las 12:00 del mediodía, se dirigía a utilizar las facilidades de la División de Tránsito de Mayagüez y se encontró con el teniente Antonio Torres Rivera, quien le esbozó que allí se encontraba el señor **ROSADO ROSADO** quien quería realizar una prueba de tinte de los cristales a su vehículo de motor. Indicó que el teniente Torres Rivera le asignó el fotómetro del retén y procedió a comenzar el procedimiento.[7] Resaltó que le explicó el procedimiento al señor **ROSADO ROSADO,** es decir, que al hacer la prueba de tinte al vehículo, el resultado debía ser 35 o más, de manera que, si daba menos de 35, le tendría que expedir un boleto de conformidad al Artículo 10.05 de la Ley de Tránsito.[8] A preguntas del Fiscal, rememoró que advino en conocimiento de que el señor **ROSADO ROSADO** había tenido una intervención previa en la cual los tintes no pasaron la prueba y estaba interesado en medirlo.[9] Detalló, que el resultado del cristal de la puerta del chofer fue de dos lecturas: 34 y 33.[10] Especificó que el cristal del chofer arrojó un resultado de 34 y los otros cristales 33, y, por tanto, ninguno pasó el porciento permitido.[11] Puntualizó que cuando comenzó a cumplimentar el formulario PPP-643.3, el señor **ROSADO ROSADO** estaba un poco molesto y alterado, entró en un dialogo fuerte con un compañero (Guilloty) en el área de reten y se llevó la licencia, el registro y el papel pues no quería que se llenara.[12] Continuó diciendo que el señor **ROSADO ROSADO**, luego de la discusión con su compañero Guilloty, decidió tomar sus documentos y retirarse.[13] Pormenorizó que al dirigirse a la salida, se encontró al agente Albino Acosta arrestando al señor **ROSADO ROSADO**.[14] Relató que en un inicio, el señor **ROSADO ROSADO** tenía "las manos duras" (término utilizado por la Policía para referirse a una persona que se niega a ser arrestado), y posteriormente, ante la amenaza del uso del "taser", cedió al arresto, lo movieron al estacionamiento y luego al cuarto donde se llevan las personas que hacen uso de bebidas alcohólicas.[15]

Testificó que una vez en ese cuarto, el señor **ROSADO ROSADO** estaba en una silla y comenzó a vociferar, maldecir y gritar fuerte "al Flerín ese, donde yo lo coja le voy a arrancar la cabeza", "el Albino ese va a saber quién soy yo".[16] Manifestó que al llegar los paramédicos para brindarle servicios al señor **ROSADO ROSADO**, se retiró del lugar de los hechos y procedió a expedir el boleto de la falta administrativa.[17]

En el contrainterrogatorio, la representación legal del señor **ROSADO ROSADO** discutió la validez del adiestramiento del agente en relación con el fotómetro; su conocimiento acerca del instrumento; las circunstancias de la expedición del boleto;

---

[6] *Transcripción de la Prueba Oral*, pág. 11, líneas 445-452; pág. 12, líneas 464-466.

[7] *Transcripción de la Prueba Oral*, pág. 12 líneas 480- 484; pág. 13, líneas 538-540.

[8] *Transcripción de la Prueba Oral*, pág. 14 líneas 542- 548.

[9] *Transcripción de la Prueba Oral*, pág. 14 líneas 555-572; pág. 34 líneas 1401-1403.

[10] *Transcripción de la Prueba Oral*, pág. 17 líneas 676- 679.

[11] *Transcripción de la Prueba Oral*, pág. 18 líneas 729-740.

[12] *Transcripción de la Prueba Oral*, pág. 19 líneas 754-764; 773-778.

[13] *Transcripción de la Prueba Oral*, pág. 19 líneas 777-788; pág. 20 líneas 794-800.

[14] *Transcripción de la Prueba Oral*, pág. 19 líneas 788-793; pág. 20 líneas 817-820; pág. 48 líneas 1985-1988.

[15] *Transcripción de la Prueba Oral*, pág. 20 líneas 817-835; pág. 21 líneas 836-842; pág. 48 líneas 1990-1991, 2002-2003.

[16] *Transcripción de la Prueba Oral*, pág. 21 líneas 870-877; pág. 22 líneas 893- 897; pág. 24 líneas 971-974.

[17] *Transcripción de la Prueba Oral*, pág. 25 líneas 1024-1043.

de las alegaciones de agresión que hubo ese día y fue confrontado con las grabaciones o videos estipulados por las partes.[18]

### Agente Flerín Albino Acosta

Apuntó que trabaja como agente investigador en la División Patrullas Carreteras de Mayagüez del Negociado de la Policía de Puerto Rico desde hace cinco (5) años.[19] Atestó que el día de los hechos, se dirigía a la División para realizar unas gestiones administrativas, cuando escuchó al señor **ROSADO ROSADO** dirigiéndose al agente Vega Montalvo en un tono alto y hostil.[20] Acotó, además, que el señor **ROSADO ROSADO** le llamó "corrupto" al agente Guilloty, cuando este le solicitó que bajara la voz.[21] Afirmó que, ante esa situación, se posicionó detrás del señor **ROSADO ROSADO** y le mencionó al agente Vega Montalvo que no discutiera con él y solo le expidiera el boleto; y, al así hacerlo, el señor **ROSADO ROSADO** se giró y le expresó "¿Quién eres tú?" en un tono hostil, por lo que se presenta como el agente Albino Acosta y se retira para salir del cuartel.[22] Matizó que el señor **ROSADO ROSADO** se le fue detrás, le preguntó que cual era su número de placa, a lo que respondió con su número y le solicitó que hiciera entrega de los documentos para que se le pudiera expedir el boleto.[23] Expuso que el señor **ROSADO ROSADO** procedió a vociferar palabras insultantes, hostiles hacia su persona y compañeros, como por ejemplo: "Yo me voy de aquí cuando me dé la gana", "Quien me va a arrestar?" "¿tu?" "Daña ropa" "So pendejo, mama bicho", por lo que procedió a arrestarlo.[24] Una vez arrestado, el agente Albino Acosta enunció que el señor **ROSADO ROSADO** fue llevado a un cuarto de interrogatorios en la División, éste se negó a proveerle su información, comenzó a dar patadas en el escritorio y a escupir en el piso.[25] Más adelante, asintió que luego de consultar la situación con el Fiscal, el agente Vega Montalvo lo detuvo para comentarle que el señor **ROSADO ROSADO** lo había amenazado de muerte y le iba arrancar la cabeza donde lo cogiera, exteriorizó que se sintió amenazado y preocupado por su seguridad personal y la de su familia.[26] Refirió que entonces el señor **ROSADO ROSADO** comenzó a vocear que había sido golpeado por los agentes, pidió que llamaran a una ambulancia y una vez llegaron los paramédicos, quería ser transportado a una institución hospitalaria.[27] Por último, aseveró que se le advirtió al señor **ROSADO ROSADO** que sería citado.[28]

En el contrainterrogatorio, el agente Albino Acosta fue cuestionado sobre sus actos en el proceso previo a ejecutar el arresto del señor **ROSADO ROSADO**; sobre las expresiones realizadas por el señor **ROSADO ROSADO** al agente Vega Montalvo; y de lo ocurrido con posterioridad al arresto.[29]

### Teniente Antonio Torres Rivera

Comunicó que está adscrito a la División de Patrullas y Carreteras del municipio de Mayagüez; lleva más de veintinueve (29) años como parte de la Policía de Puerto Rico; y cuatro (4) años como teniente.[30] Desplegó que el señor **ROSADO ROSADO** llegó a la Unidad de Trabajo y él se encontraba en el área del retén en ese momento.[31] Acreditó que realizó un informe concerniente a la investigación del

---

[18] *Transcripción de la Prueba Oral*, pág. 27 líneas 1114-1126; pág. 28 líneas 1127-1168; pág. 30 líneas 1231-1251; pág. 31 líneas 1252-1255; pág. 35 líneas 1457-1461; pág. 36 líneas 14

[19] *Transcripción de la Prueba Oral*, pág. 59 líneas 2440-2455.

[20] *Transcripción de la Prueba Oral*, pág. 60 líneas 2468-2480, 2490-2491; pág. 61 líneas 2528-2530; pág. 69 líneas 2876-2878.

[21] *Transcripción de la Prueba Oral*, pág. 61 líneas 2524-2527.

[22] *Transcripción de la Prueba Oral*, pág. 62 líneas 2553-2561; pág. 63 líneas 2607-2615; pág. 70 líneas 2909-2911.

[23] *Transcripción de la Prueba Oral*, pág. 64 líneas 2639-2649; pág. 70 líneas 2915-2917.

[24] *Transcripción de la Prueba Oral*, pág. 64 líneas 2649-2653, 2671-2674; pág. 76 líneas 3140-3149.

[25] *Transcripción de la Prueba Oral*, pág. 65 líneas 2683-2698.

[26] *Transcripción de la Prueba Oral*, pág. 66 líneas 2729-2748.

[27] *Transcripción de la Prueba Oral*, pág. 66 líneas 2754-2758.

[28] *Transcripción de la Prueba Oral*, pág. 66 líneas 2749-2750, pág. 67 líneas 2759-2761.

[29] *Transcripción de la Prueba Oral*, pág. 73 líneas 3008-3049; pág. 74 líneas 3013-3091; pág. 75 líneas 3092-3098; pág. 3092-3113; pág. 77 líneas 3202-3208; pág. 80 líneas 3301-3342; pág. 85 líneas 3509-0515.

[30] *Transcripción de la Prueba Oral*, pág. 88 líneas 3651-3657.

[31] *Transcripción de la Prueba Oral*, pág. 89 líneas 3681-3690.

presunto incidente de agresión en contra del señor **Rosado Rosado**.[32] Concretamente, como parte de dicha investigación entrevistó a los siguientes agentes: agente Vega Montalvo, agente Albino Acosta, agente Gerardo Castillo, agente John Fernández, agente José Ramos Vargas y al agente Guilloty; al igual que a los señores **Rosado Rosado**, Juan Rosado, y Magaly Vega Jiménez.[33] Reconoció expresamente que él no presenció ni fue testigo de los hechos.[34] Avaló que fue quien le asignó al agente Vega Montalvo que verificara los tintes al carro del señor **Rosado Rosado**.[35] Apuntaló lo ocurrido el día 1 de noviembre de 2022, según la información que obtuvo de las entrevistas realizadas.[36]

En un turno posterior, como prueba de impugnación, se sentó nuevamente al teniente Torres Rivera quien elucidó que tanto el señor Juan Rosado Rosado como la señora Marilyn Vega Jiménez le manifestaron que el señor **Rosado Rosado** era paciente de salud mental, padecía de la cabeza, tomaba cinco (5) medicamentos, era esquizofrénico y no estaba bien.[37]

### Sr. Juan Rosado Rosado

Es el hermano del señor **Rosado Rosado**.[38] Precisó que su esposa recibió una llamada de su cuñada, señora Marilyn Vega Jiménez, para que se personara al cuartel de Mayagüez y al llegar lo encontró arrestado pero que en un inicio no le permitieron pasar a verlo. En un rato, lo dejaron pasar al cuarto donde estaba el señor **Rosado Rosado**.[39] Relacionó que lo primero que le mencionó el señor **Rosado Rosado** fue que lo llevaran al hospital toda vez que se quejaba de dolor en las costillas y en el lado derecho de su cara.[40] Sostuvo que estando él allí, le presentaron a su hermano un documento con advertencias y éste se negó a firmarlo.[41] Reseñó que al salir del cuartel, el señor **Rosado Rosado** se "eñangotó" y comenzó a toser y vomitar.[42]

Durante el contrainterrogatorio, el señor Juan Rosado Rosado fue confrontado con preguntas concernientes al momento en que llegó al cuartel y vio a su hermano hasta que fue llevado al hospital.[43]

### Sra. Marilyn Vega Jiménez

Divulgó ser la pareja del señor **Rosado Rosado** y haber pasado ese día junto a él en el municipio de San Germán.[44] Señaló además que, "un agente" los detuvo por los tintes y al pasar la prueba, los orientó que pasaran por el cuartel a buscar un presunto "sellito".[45] Aceptó que es en el cuartel que el agente Vega Montalvo les aclaró que no podía darles el "sellito" porque su resultado era 34 y eso era menor a 35 que es el mínimo permitido por ley.[46] Afianzó que el agente Albino Acosta le informó a su esposo "si los tintes no están al día, yo soy el que te voy a dar el boleto", "¿Dónde está tu carro?", "Dale pa'l carro" y no se identificó como agente.[47] Contó lo sucedido en el estacionamiento al momento del arresto del señor **Rosado Rosado** y destacó que el agente Albino Acosta le expresó a su esposo lo siguiente: "tú lo que eres es un buen

---

[32] *Transcripción de la Prueba Oral*, pág. 89 líneas 3708-3711.
[33] *Transcripción de la Prueba Oral*, pág. 89 líneas 3716-3717; pág. 90 líneas 3718-3721.
[34] *Transcripción de la Prueba Oral*, pág. 89 líneas 3710-3711; pág. 92 líneas 3813-3815.
[35] *Transcripción de la Prueba Oral*, pág. 90 líneas 3731-3735.
[36] *Transcripción de la Prueba Oral*, pág. 90 líneas 3744-3759; pág. 91 líneas 3760-3770; pág. 94 líneas 3888-3896, 3914-3926; pág. 95 líneas 3950-3968; pág. 96 líneas 3969-4010; pág. 97 líneas 4011-4052; pág. 98 líneas 4053-4072.
[37] *Transcripción de la Prueba Oral*, pág. 116 líneas 4828-4833, 4837-4842.
[38] *Transcripción de la Prueba Oral*, pág. 101 líneas 4178-4184.
[39] *Transcripción de la Prueba Oral*, pág. 101 líneas 4189-4192, 4202-4219.
[40] *Transcripción de la Prueba Oral*, pág. 102 líneas 4224-4237, 4241-4243.
[41] *Transcripción de la Prueba Oral*, pág. 102 líneas 4254-4259.
[42] *Transcripción de la Prueba Oral*, pág. 103 líneas 4262-4268.
[43] *Transcripción de la Prueba Oral*, pág. 106 líneas 4388-4429. Durante la declaración bajo juramento de Juan Rosado Rosado se presentó y admitió como Exhibit #6 un total de diez (10) fotos. El **PPR** le mostró siete (7) de las fotografías al testigo Juan Rosado Rosado.
[44] *Transcripción de la Prueba Oral*, pág. 110 líneas 4556-4564.
[45] *Transcripción de la Prueba Oral*, pág. 110 líneas 4560-4563.
[46] *Transcripción de la Prueba Oral*, pág. 110 líneas 4574-4586.
[47] *Transcripción de la Prueba Oral*, pág. 111 líneas 4613-4621; pág. 112 líneas 4660-4664.

pendejo y cabrón" "estás arrestado".[48] Aludió que nunca escuchó a su esposo dirigirse con palabras soeces al agente Albino Acosta o al agente Vega Montalvo.[49]

A preguntas del fiscal, la señora Vega Jiménez comentó haber sido entrevistada por el teniente Torres Rivera y negó que le expresara que el señor **ROSADO ROSADO** fuese paciente de salud mental ni que tomara medicamentos.[50]

Justipreciada la prueba testifical desfilada, los videos y fotografías, el 15 de noviembre de 2023, se declaró culpable al señor **ROSADO ROSADO** por todos los cargos imputados: Artículos 177 y 246(a) del Código Penal de Puerto Rico de 2012 y se decretaron las *Sentencias* apeladas.[51]

Inconforme, el 30 de noviembre de 2023, el señor **ROSADO ROSADO** presentó su *Reconsideración* alegando que "no se probó el caso más allá de duda razonable".[52] El 4 de diciembre de 2023, se expidió *Orden* en la cual se dispuso no ha lugar al petitorio de reconsideración.[53]

Aún en desacuerdo, el 2 de enero de 2024, el señor **ROSADO ROSADO** acudió mediante *Apelación Criminal* ante este Tribunal de Apelaciones señalando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia al no absolver al acusado, toda vez que el Ministerio Público no presentó prueba que estableciera cada uno de los elementos del delito más allá de duda razonable.

El 17 de enero de 2024, prescribimos *Resolución* en la cual, entre otras, reglamentamos los procedimientos sobre la reproducción de la prueba oral. Subsiguientemente, el 8 de marzo de 2024, pronunciamos *Resolución* acogiendo la transcripción de la prueba oral y reiterando los términos concedidos al señor **ROSADO ROSADO** y el **PPR** para presentar sus alegatos haciendo referencia a las porciones de la transcripción de la prueba oral relevantes a su(s) señalamiento(s) de error(es). El 18 de marzo de 2024, el señor **ROSADO ROSADO** presentó la *Transcripción de Juicio*.

---

[48] *Transcripción de la Prueba Oral*, pág. 111 líneas 4629-4639; pág. 112 líneas 4640-4653.
[49] *Transcripción de la Prueba Oral*, pág. 113 líneas 4711-4714.
[50] *Transcripción de la Prueba Oral*, pág. 114 líneas 4726-4731, 4734-4761.
[51] *Transcripción de la Prueba Oral*, pág. 126 líneas 5259-5267; pág. 127 líneas 5268-2275.
[52] Apéndice de la *Apelación Criminal Alegato del Apelante*, pág. 3.
[53] *Íd.*, pág. 4.

Más tarde, el 10 de abril de 2024, el señor **ROSADO ROSADO** presentó su *Apelación Criminal Alegato del Apelante*. Después de concedida una prórroga, el 15 de mayo de 2024, el **PUEBLO DE PUERTO RICO** presentó su *Alegato de El Pueblo*.

Evaluado concienzudamente el expediente del caso; contando con el beneficio de la comparecencia de ambas partes; y, habiendo examinado minuciosamente la transcripción de la prueba oral estipulada, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a las controversias planteadas.

- II -

- A – *PRESUNCIÓN DE VALIDEZ Y CORRECCIÓN*

Una vez la parte apelante interpone su recurso, ello suspende la ejecución de la *Sentencia* únicamente cuando el foro primario o este foro revisor haya fijado una fianza en la apelación y esta haya sido presentada, tras haber escuchado al Ministerio Público.[54]

Las sentencias dictadas por los tribunales tienen a su favor una presunción de validez y corrección.[55] Ello esta cimentada sobre una base muy importante pues reconoce el hecho real de que el juez observa los testigos mientras declaran y dirime su credibilidad.[56] En otras palabras, el juez de instancia puede percibir elementos que no pueden ser concebidos mediante documentos y una transcripción de la prueba.[57]

Asimismo, la Regla 110 de Evidencia instituye que "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".[58] En virtud de ello, es un criterio reiterado que cuando se le suplica a un foro apelativo que revise cuestiones de hechos, la *apreciación de la prueba*, en primera instancia, le corresponde al foro sentenciador dado que estos tienen la oportunidad de observar y oír a los testigos,

---

[54] S. Steidel Figueroa, et. al, *Perspectivas en la Práctica Apelativa*, Ediciones SITUM 2018, págs. 10-12.
[55] *López García v. López García*, 200 DPR 50, 59 (2018).
[56] S. Steidel Figueroa, *supra*, pág. 102.
[57] *Íd*.
[58] 32 LPRA Ap. VI.

y por ello, están en mejor posición de evaluarla.[59] En ese marco, la evaluación del foro sentenciador merece respeto y deferencia.[60]

Cónsono con ello, por lo general, "los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio".[61] Por lo tanto, no debemos descartar las determinaciones "tajantes y ponderadas del foro de instancia" y sustituirlas por nuestra propia apreciación, a base de un examen del expediente del caso.[62] Consiguientemente, los foros apelativos podremos intervenir con la *apreciación de la prueba* cuando exista error manifiesto, pasión, prejuicio, parcialidad o cuando un análisis integral, detallado y minucioso de la prueba así lo justifique.[63] Solo ante la presencia de estos elementos y/o cuando la *apreciación de la prueba* no concuerde con la realidad fáctica o esta sea inherentemente imposible o increíble, habremos de intervenir con la apreciación efectuada.[64] Esto sin olvidar que "la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción".[65] El peso para rebatir la presunción de corrección que tienen las actuaciones de los tribunales de instancia le corresponde a la parte que la cuestiona.[66]

En consonancia con dichos principios, la Regla 19 del *Reglamento del Tribunal de Apelaciones*, dispone, en lo pertinente, que "[c]uando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, deberá reproducir la prueba oral de conformidad con lo dispuesto en la Regla 76 de este

---

[59] *Pueblo v. Acevedo Estrada*, 150 DPR 84, 98-99 (2000); *López Vicil v. ITT Intermedia, Inc.*, 142 DPR 857, 865 (1997).

[60] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).

[61] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009).

[62] *Íd.*, págs. 65- 66.

[63] *Pueblo v. Negrón Ramírez*, 213 DPR 895 (2024); *Pueblo v. Casillas, Torres*, 190 DPR 398, 426 (2014); *González Hernández v. González Hernández, supra*, pág. 777; *Pueblo v. Maisonave*, 129 DPR 49 (1991).

[64] *Pueblo v. Acevedo Estrada, supra*.

[65] *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).

[66] *Pueblo v. Prieto Maysonet*, 103 DPR 102, 107 (1974).

Reglamento".[67] Sobre ese particular, en *Hernández v. San Lorenzo Const.*, el Máximo Foro concluyó que, debido a que las determinaciones de hecho que hace el Tribunal de Primera Instancia merecen deferencia, por la oportunidad que tuvo el juzgador de los hechos de observar y escuchar a los testigos, **la intervención del foro apelativo con esa prueba tiene que estar basada en un análisis independiente de la prueba desfilada y no a base de los hechos que exponen las partes**.[68]

### - B – *DUDA RAZONABLE*

La Sec. II del Art. II de la Constitución de Puerto Rico contempla como un imperativo que, en todo proceso criminal, el acusado disfrute del derecho a la *presunción de inocencia*.[69] Tal presunción es un principio consagrado del derecho penal.[70] Para rebatirla, el ordenamiento jurídico precisa la presentación de evidencia que compruebe la culpabilidad del acusado más allá de duda razonable. De este modo, el peso de la prueba recae en el Estado, quien deberá presentar evidencia sobre la existencia de todos los elementos del delito y su conexión con el acusado. Aun así, la culpabilidad del acusado no tiene que probarse con certeza matemática. Se exige que se presente prueba satisfactoria y suficiente en derecho, lo que significa que produzca certeza o convicción moral en una conciencia exenta de preocupación y en un ánimo, no prevenido.[71]

Como resultado, la *duda razonable* no es especulativa o imaginaria y tampoco es cualquier duda posible. Se trata de aquella duda fundada, producto de raciocinio de todos los elementos de juicio envueltos en el caso. La *duda razonable* no es otra cosa que la insatisfacción en la conciencia del juzgador con la prueba presentada.[72] Es un principio fundamental de antiquísima estirpe.[73]

---

[67] Regla 19 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 37, 216 DPR __ (2025).
[68] 153 DPR 405, 425 (2001). (énfasis nuestro).
[69] LPRA, Tomo 1.
[70] E. Batista Ortiz, *Leyes Penales Especiales Sumario Práctico*, Ediciones SITUM (2015), pág. 26.
[71] *Pueblo v. Negrón Ramírez, supra*; *Pueblo v. Toro Martínez, supra*, págs. 855-856.
[72] *Pueblo v. Irizarry*, 156 DPR 780, 788 (2002).
[73] E. Batista Ortiz, *supra*, pág. 26.

## - C – *DELITOS*

En el Código Penal de Puerto Rico existen múltiples delitos tipificados, estos se dividen en delitos graves o menos graves. En lo atinente, corresponde adentrarnos al delito de la *amenaza*.[74] Este delito está comprendido en el Artículo 177 de Código Penal de Puerto Rico de 2012, el cual estatuye:

> "[i]ncurrirá en delito menos grave, toda persona que amenaza a una o varias personas con causar un daño determinado a su persona o su familia, integridad corporal, derechos, honor o patrimonio".[75]

En lo concerniente, la profesora Nevares Muñiz elucida que la *amenaza* consiste en una manifestación expresa "de que se llevará a cabo determinada intención delictiva o daño contra otra persona."[76] Consustancial con esta definición, la profesora Nevares Muñiz dilucida que **los elementos del delito** de *amenaza* consisten en: **(1) una expresión de voluntad inequívoca, ya sea escrita o verbalizada; (2) de ocasionar un daño específico a una persona en particular; (3) unida a "una apariencia de peligro e intranquilidad para el destinatario de la amenaza o quien la escucha"**.[77]

En definitiva, el delito de *amenaza* enmarca una expresión concreta, cierta y determinada de la **voluntad manifiesta de alguien de causar daño a un tercero o a su familia, capaz de producir un temor cierto de peligro e inseguridad en quien recibe la amenaza**.[78] El delito queda consumado una vez el actor expresa o verbaliza su *amenaza*.[79] Es relevante descollar que el daño con el que se *amenaza* tiene que ser "*específico y determinado*" y quien profiere la *amenaza* **deberá tener la capacidad para así concretarla** o para "infligir el daño" que ha dicho ha de causar, pues, ausente tal capacidad, quien recibe la amenaza no sentirá grado alguno de temor, inseguridad o peligro y, por eso, no se configura el delito.[80]

---

[74] Ley Núm. 146 de 30 de julio de 2012, según enmendada. 33 LPRA § 5001.
[75] 33 LPRA § 5243.
[76] D. Nevares Muñiz, *Código Penal de Puerto Rico Comentado*, pág. 25 (2012).
[77] *Íd*., Véase, además 33 LPRA § 5243. (énfasis nuestro).
[78] *Pueblo v. Vélez Rodríguez*, 186 DPR 621 (2012). (énfasis nuestro).
[79] Nevares Muñiz, op. cit., pág. 257.
[80] *Íd*., en la pág. 258. (énfasis nuestro).

De otro lado, el delito de *resistencia u obstrucción a la autoridad pública* del Código Penal de Puerto Rico de 2012 tipifica:

> "[c]onstituirá delito menos grave la resistencia u obstrucción al ejercicio de la autoridad pública **a propósito** o **con conocimiento** en cualquiera de las siguientes circunstancias: (a) impedir a cualquier funcionario o empleado público en el cumplimiento o al tratar de cumplir alguna de las obligaciones de su cargo.[81]

Nuevamente, para configurar los elementos de este delito se requiere un **elemento de intención** de que, a sabiendas de su ilicitud, es ejecutado.[82]

- III -

En su recurso, el señor **ROSADO ROSADO** punteó que el foro de instancia erró al no absolverle, toda vez que, el **PUEBLO DE PUERTO RICO** no presentó prueba que comprobara cada uno de los elementos de los delitos más allá de *duda razonable*. Además, cuestionó la presentación de las imágenes y vídeos que el **PUEBLO DE PUERTO RICO** presentó como *Exhibit* que fuesen estipulada por las partes. Particularmente, hace alusión a seis (6) "*clips*" en los que asegura se desprende suspicacia, por lo que, inducen a crear *duda razonable* y alejarse de la configuración de los elementos del delito. Del mismo modo, propuso que el informe inicial del incidente (*Exhibit* 5) presenta incongruencias y la prueba ventilada no tuvo el efecto de enmendar la *Denuncia*. Arguyó que las declaraciones de los testigos, en especial, el testimonio del teniente Antonio Torres, es contradictorio y, por tanto, generó *duda razonable*.

Por su lado, el **PUEBLO DE PUERTO RICO**, expuso que los dictámenes del Tribunal de Primera Instancia gozan de una *presunción de corrección*. De esa manera, ratificó que el juzgador de los hechos brindó el valor probatorio que merecieron los testimonios ventilados. Específicamente, dos (2) de los testimonios evidenciaron que el Agente Albino Acosta se sintió amenazado por las manifestaciones vociferadas por el señor **ROSADO ROSADO**. Añadió que no cabe duda de que se logró probar más allá de *duda razonable* todos los elementos de los delitos de los cuales fue encontrado culpable. Conjuntamente, aseguró que tanto

---

[81] 33 LPRA § 5336. (énfasis nuestro).
[82] (énfasis nuestro).

la prueba testimonial como la documental desfilada constituyó evidencia suficiente para lograr la convicción. Descolló su escrito afirmando que no existe nada en el expediente que denote prejuicio, pasión, parcialidad o error manifiesto en la evaluación de los testimonios y documentos que sostienen la determinación de culpabilidad, lo cual conlleva que se confirmen las *Sentencias* apeladas.

La primera modalidad del delito de *resistencia u obstrucción a la autoridad* se configura cuando una persona impide a cualquier funcionario cumplir o intentar cumplir alguna de las obligaciones inherentes a su cargo. Siendo ello así, discernimos que el componente objetivo del delito se satisface al **desobedecer una orden lícita y dentro de las prerrogativas del cargo de un funcionario**. Igualmente, cuando escrutamos el elemento subjetivo del delito, el estatuto exige que la persona obre con propósito y con conocimiento. Análogamente, cuando evaluamos el delito de la *amenaza*, la persona imputada debe expresar su intención de causar un **daño específico y determinado**, y **causar en la persona que recibe la expresión temor o inseguridad**.

Analizado detalladamente el expediente judicial y la *Transcripción de Prueba Oral* (TPO), se reveló que todos los declarantes coinciden en que el señor ROSADO ROSADO llegó al cuartel voluntariamente para conocer el porcentaje de tinte en sus cristales. Prontamente, el teniente Torres y el agente Albino Acosta se dirigieron a su vehículo para efectuar la prueba con el fotómetro y su resultado fue mayor al permitido por la *Ley de Vehículos y Tránsito de Puerto Rico*. Así, procedía imponer la multa administrativa correspondiente. Tal acción de los funcionarios, en estricto cumplimiento con la ley, desató molestia en el señor ROSADO ROSADO y es en ese momento, cuando comienza a vociferar improperios y palabras soeces. Tanto las declaraciones del teniente Torres como las del agente Albino Acosta coinciden en que el señor ROSADO ROSADO se molestó cuando deciden expedirle la multa y no quiso cooperar con el proceso. Más allá de lo anterior, el señor ROSADO ROSADO también le arrebató los documentos del vehículo al Agente Vega Montalvo, impidiendo que este último pudiera culminar el procedimiento para la

expedición de la referida multa. Inclusive, el señor **ROSADO ROSADO** accedió a la admisión por estipulación de las partes del video que en esta apelación es cuestionado. El simple hecho de desobedecer, por estar en desacuerdo – tal y como lo hizo el señor **ROSADO ROSADO** – una orden lícita de un funcionario con autoridad en ley, con intención, es suficiente para configurar el delito de *resistencia u obstrucción de autoridad*. En cambio, este Tribunal colige que las expresiones impropias, la actitud desafiante del señor **ROSADO ROSADO** y el vociferar palabras con grados de violencia con intención de intimidar, como lo fue *"al Flerin ese, donde yo lo coja le voy a arrancar la cabeza"* y *"el Albino ese va a saber quién soy yo"* fueron suficientes para que se configurara el delito de *amenaza*. Es preciso destacar que los hechos fueron presenciados por ambos agentes declarantes, cuyos testimonios el foro primario adscribió el respectivo valor probatorio. Por consiguiente, denotamos que en la *apreciación de la prueba* del Tribunal de Primera Instancia no se ha actuado con prejuicio, pasión, parcialidad o error manifiesto.

- IV -

Por los fundamentos antes expuestos, **confirmamos** las *Sentencias* decretadas el 15 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Añasco.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones